IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03526-PAB

STEPHANIE A. BRANDT STEGMAIER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER

    This matter is before the Court on plaintiff Stephanie A. Brandt Stegmaier's

complaint [Docket No. 1], filed on December 31, 2013.  Plaintiff seeks review of the final

decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim

for disability insurance benefits and supplemental security income under Titles II and

XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.  The

Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C.

§ 405(g).

## I. BACKGROUND

    On September 26, 2010, plaintiff applied for disability insurance benefits and

supplemental security income under Titles II and XVI of the Act.  R. at 13.  Plaintiff

alleged that she had been disabled since February 14, 2008.  *Id.*  After an initial

administrative denial of her claim, plaintiff appeared at a hearing before an

Administrative Law Judge ("ALJ") on June 27, 2012.  *Id.*  On August 24, 2012, the ALJ

denied plaintiff's claim. *Id.* at 23.

The ALJ found that plaintiff had the severe impairments of mild degenerative disc disease of the lumbar spine and obesity. R. at 16. The ALJ further found that other impairments alleged by plaintiff, including thoracic outlet syndrome, sciatica, back injury, hand and wrist pain, depression, fibromyalgia, a "tingly feeling in [her] body from shoulders down" when walking, migraines, intestinal pain, and urinary incontinence, were non-severe impairments. *Id.* at 17. The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.* at 18, and found that plaintiff had the residual functional capacity ("RFC") to "perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)." *Id.* Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id.* at 22.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990).  "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district

court will not "reweigh the evidence or retry the case," but must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met."  *Flaherty*, 515

F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a

ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

3

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to fully develop the record of plaintiff's alleged impairments at step 2, *see* Docket No. 13 at 22-33, (2) failing to

consider all relevant evidence at steps 2 and 4, *see id.* at 33-38, and (3) failing to support his RFC finding with substantial evidence. *Id*. at 38-39.

The evidence of record is as follows. Before her alleged disability onset date, plaintiff worked as a Certified Nurse Aide ("CNA") at Del Sol Medical Center in El Paso, Texas. R. at 40. In November 2008, plaintiff visited physician's assistant Jason Wray to evaluate a lump in her breast. R. at 275. Plaintiff reported asthma and a prior colonoscopy, but no other health problems. *Id.* at 276. On January 10, 2009, plaintiff went to the emergency room, complaining of shoulder pain. *Id.* at 211. Plaintiff told her emergency room treater that she had been working for a little over two weeks delivering phone books, and that she had never had shoulder problems in the past. *Id.* On January 14, 2009, plaintiff visited Mr. Wray for a follow-up appointment. *Id.* at 280. Plaintiff reported a pain level of 8 and told Mr. Wray that her shoulder had started bothering her a few days after she began delivering phone books. *Id.* Mr. Wray found that plaintiff had normal range of motion and strength in her right arm and shoulder, could reach across her body with her left arm and could lift her left hand off of her lower back without difficulty, but had pain reaching over her head. *Id*. at 281. Plaintiff was diagnosed with tendinitis and prescribed tramadol for pain. *Id.*

In August 2009, plaintiff visited the emergency room complaining of pain in her upper back and left shoulder after moving a couch two days earlier. R. at 222. Plaintiff reported that the pain was "dull and achy" and "worse with movement." *Id.* Plaintiff's pain was described as "mild." *Id.* Plaintiff's back was described as "normal" with tenderness in the "left upper back area," and plaintiff had a normal range of motion, 5/5

5

strength, and sensation in both of her arms.  *Id*. at 224.  Plaintiff was diagnosed with a muscle strain and treated with muscle relaxers and pain medication.  *Id.*

In September 2009, plaintiff went to the emergency room complaining of flu symptoms.  R. at 233.  The examiner noted that plaintiff did not complain of chest pain, abdominal pain, nausea, back pain, paresthesias,[1] focal weakness, or sensory changes.  *Id.* at 234.  Inspection of plaintiff's back was normal, with no tenderness to palpation.  *Id.* at 235.

In April 2010, plaintiff went to the emergency room complaining of wrist pain after falling.  R. at 249.  The examiner found that plaintiff had a normal range of motion in her upper extremities, and x-rays found no fracture, dislocation, foreign body, bony lesion, or degenerative joint disease.  *Id.* at 251.  Plaintiff was diagnosed with a sprain and discharged.  *Id.* at 251-52.

In September 2010, plaintiff went to the emergency room with complaints of back pain.  R. at 260.  Plaintiff reported that she had an injury in 2000 and had periodic flareups.  *Id.*  The examiner noted that plaintiff "appear[ed] uncomfortable" and had "mild pain distress."  *Id.* at 262.  Examination of plaintiff's back was normal, with tenderness in the lower back, normal straight leg tests, no spasms, and a normal gait.  *Id.* at 262-63.  Shortly after her ER visit, plaintiff followed up with Thomas Dickey, a physician's assistant.  *Id.* at 289.  Plaintiff told PA Dickey that she had a back strain several years previously and has had back pain ever since.  *Id.*  PA Dickey found that

---

[1]A "paresthesia" is "[a] spontaneous abnormal usually nonpainful sensation (*e.g.*, burning, pricking); may be due to lesions of both the central and peripheral nervous systems."  Stedman's Medical Dictionary paresthesia (27th ed. 2000).

plaintiff had "several intense trigger points" and gave plaintiff a trigger point injection, which plaintiff said provided relief. *Id.* at 290. The following week, PA Dickey reported that plaintiff's symptoms had improved, but that she needed further injections. *Id.* at 291. Plaintiff received several trigger point injections over the following months, and PA Dickey noted improvement on numerous occasions. *See id.* at 294, 297, 299, 470, 472, 474, 482.

In October 2010, an MRI on plaintiff's lumbar spine was normal except for two "small disk bulges" and mild arthropathy in the lumbar region. R. at 271.

In October 2010, plaintiff asked Mr. Wray to fill out a "Med-9" form in connection with an application for state disability aid. R. at 477. Since Mr. Wray had not seen plaintiff since 2008, he referred plaintiff to PA Dickey. The following day, PA Dickey opined that he did "not feel [plaintiff] is totally disabled, but she will need to be trained to do aspects of her CNA job that does not include moving and lifting patients." *Id.* at 474.

In November 2010, plaintiff reported to Mr. Wray that she had suffered from pain "from the top of her neck to the lumbar spine" for years. R. at 609. Plaintiff denied that she had any numbness or weakness. *Id*. The next day, plaintiff saw a different PA, Jessica Wray, and reported that she had experienced chronic pain in her shoulders, back, and hips for years, that she had thoracic outlet syndrome in both shoulders from a car accident in 1995, that she injured her back in 2000, and that the pain had begun to get worse about 7-9 months previously. *Id.* at 605. Ms. Wray examined plaintiff and noted that she had tenderness along the thoracic and lumbar spine and was unable to perform a straight leg raise test. *Id.* at 607. Plaintiff had 5/5 strength in the lower

extremities.  *Id.*  Ms. Wray diagnosed plaintiff with chronic pain syndrome,
recommended that plaintiff exercise and lose weight, and adjusted plaintiff's pain
medications.  *Id.*  Ms. Wray adjusted plaintiff's pain medications again in January 2011,
*id.* at 599, and again in March 2011.  *Id.* at 586.

In March 2011, Dr. Catherine Egan treated plaintiff for strep throat.  R. at 579.
Plaintiff reported that her hands were "constantly tingling and feel like ice cubes," that
she had lower back pain that radiated to the right leg, and that she had "tingling from
[the] head down including the lips" when walking.  *Id.*  Dr. Egan diagnosed chronic pain
syndrome.  *Id.*  Plaintiff informed Dr. Egan that a consultant in Denver told her that she
has fibromyalgia, but that she cannot afford the treatment.  *Id.*  Dr. Egan informed
plaintiff that Lyrica, which plaintiff had been taking, is a treatment for fibromyalgia.  *Id.*

In April 2011, plaintiff complained to Dr. Egan of pain "all over" that had lasted for
the previous three or four years.  R. at 575.  Dr. Egan reiterated her diagnosis of
chronic pain syndrome and noted that plaintiff's chronic pain was a "fibromyalgia type
picture."  *Id.* at 577.  Dr. Egan prescribed Cymbalta, recommended that plaintiff
exercise, and noted that plaintiff might need to consult a physical therapist to "get her
moving in a therapeutic way."  *Id.*  On April 10, 2011, plaintiff went to the emergency
room complaining of left thumb redness and swelling.  R. at 406.  Examination of
plaintiff's arms was normal.  *Id.* at 410.  On April 28, 2011, plaintiff reported to Dr. Egan
that her pain was about the same, but was aggravated with certain forms of exercise,
and that she could not sit or stand very long.  *Id.* at 568.  Dr. Egan advised plaintiff to
start walking "in a slow and gradual increase in amount."  *Id.* at 570.  Dr. Egan included

8

a new assessment of fibromyalgia. *Id.*

On June 7-8, 2011, plaintiff appeared at the emergency room with a cough and difficulty breathing. R. at 382. An examination on June 7, 2011 noted no tenderness in plaintiff's back, normal function in the upper and lower extremities, and no tenderness in the abdomen. *Id.* at 386. An examination the following day showed mild tenderness in the abdomen. *Id.* at 361.

In August 2011, plaintiff went to the emergency room complaining of nausea and vomiting. R. at 349. Examinations of plaintiff's back and extremities were described as normal. *Id.* In October, 2011, plaintiff returned to the emergency room with complaints of abdominal pain that had caused her to vomit. *Id.* at 460. Plaintiff's examiner diagnosed plaintiff with upper abdominal pain, likely due to a fatty liver. *Id.* at 461. In November 2011, plaintiff told Ms. Wray that she had experienced constant abdominal pain for about a year. *Id.* at 561. Ms. Wray sent plaintiff for an ultrasound, which showed "diffuse fatty change" in plaintiff's liver. *Id.* at 529. An MRI in December 2011 showed a fatty liver with normal gallbladder and bile ducts. *Id.* at 531.

In July 2012, plaintiff saw Dr. Thomas Manchester with complaints of abdominal pain and diarrhea. R. at 316. Plaintiff reported joint pain and stiffness and told Dr. Manchester that she can climb a flight of stairs and walk a mile. *Id.* Dr. Manchester noted that plaintiff's abdomen was very tender and recommended removing plaintiff's gallbladder. *Id.* at 317. Plaintiff had the surgery on July 26, 2012. *Id.* at 333-34.

In her function report, plaintiff reported that she had a hard time lifting more than a few pounds because it increased her back, shoulder, arm, and head pain. R. at 161. Plaintiff also stated that sitting in anything other than a recliner increased her pain, as

did standing for more than 2-3 minutes.  *Id.*  Plaintiff said that walking for more than five minutes caused her body to get a "prickly tingly feeling" from the neck down and increased her back pain, and that she had spells of urinary and bowel incontinence.  *Id.*  Additionally, plaintiff's mother, Karen Lewis, completed a third party function report.  *Id.* at 183-90.  Ms. Lewis noted that plaintiff "wants to sleep a lot" and is "always in pain." *Id.* at 183.  Ms. Lewis reported that plaintiff can only lift five to ten pounds, is limited to walking about a half a block, can sit for a maximum of one to two hours, and has trouble concentrating and getting along with others because of depression.  *Id.* at 188.

At the hearing, plaintiff testified that she suffered from extreme fatigue due to her impairments.  R. at 44.  Plaintiff also testified that she could only stand for a maximum of ten minutes, walk for about one block, and could, at times, sit for up to an hour, but at other times was limited to sitting for 15 to 20 minutes because of her back pain.  *Id.* at 54.

### *1.  Determination of Severe Impairments at Step Two*

Plaintiff argues that the ALJ erred in concluding at step two that her alleged hand and wrist pain, depression, fibromyalgia, "tingly feeling" in her body from the shoulders down, migraines, and urinary incontinence were not severe impairments.  Docket No. 13 at 23.  Specifically, plaintiff argues that there is no evidence in the record "to show [that] these impairments have ever been fully medically evaluated," and attributes this lack of evidence to the ALJ's failure to develop an adequate record.  *Id.* at 24.

According to plaintiff, the ALJ's finding that the above-listed impairments were not "severe" was error because "missing even a single severe impairment at Step 2 requires a [d]ecision to be vacated."  *Id.* at 22.  Plaintiff is mistaken.  Step two is merely

10

a threshold check against non-meritorious claims of disability.  *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining that at step two, "the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities").  Consequently, when an ALJ finds that a claimant has one or more severe impairments, but erroneously fails to list others, that error may have little independent impact on the ultimate disability determination.  *See Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation.").

Plaintiff's argument that the ALJ failed to develop an adequate record for his step two finding is similarly misplaced.  At step two, the burden is on plaintiff, not the ALJ, to produce evidence that she has a medically severe impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("The claimant first must bear the burden . . . at step two that he has a medically severe impairment or combination of impairments. . . .  It is not unreasonable to require the [plaintiff,] who is in a better position to provide information about his own medical condition, to do so.").  Although "the showing [plaintiff] must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient."  *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).  As the ALJ noted, impairments that are supported only by plaintiff's recitation of symptoms cannot be considered severe.  SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("No symptom or combination of symptoms by itself can constitute a medically determinable impairment.").

11

Finally, to the extent plaintiff argues that the ALJ's failure to include her alleged impairments in the list of "severe" impairments amounts to failure to consider them at all, the Court notes that, in reaching his RFC determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. at 18.

In sum, the Court does not rule on whether the ALJ should have included more of plaintiff's alleged conditions in the list of plaintiff's "severe" impairments. The record shows that the ALJ found that plaintiff met her burden to show that she had one or more severe impairments and moved past the step two threshold injury to the remaining steps in the five-step process. Thus, even if the ALJ committed error in listing plaintiff's severe impairments, any such error would necessarily be harmless. *Groberg*, 415 F. App'x at 67.

### 2.  The ALJ's RFC Determination

Plaintiff argues that the ALJ's determination that plaintiff is capable of performing a full range of light work is not supported by substantial evidence for two reasons: first, that the evidence that the ALJ cited of plaintiff's past activities and claimed exertional abilities is not evidence that plaintiff is capable of full-time work, *see* Docket No. 13 at 33-35, and second, that the ALJ erred in discounting the functional report from plaintiff's mother. *Id.* at 35-38. The Court addresses each argument in turn.

Plaintiff first argues that the evidence cited by the ALJ is not substantial evidence for the conclusion that plaintiff is capable of working full-time. Plaintiff takes issue specifically with the ALJ's reference to plaintiff's claims that she walked twice per week for exercise, medical records showing normal range of motion in plaintiff's upper

12

extremities, plaintiff's claim that she injured herself while moving a couch, and plaintiff's report to Dr. Manchester that she can climb a flight of stairs and walk a mile.  Docket No. 13 at 33-35.

The evaluation of subjective testimony of pain "ultimately and necessarily turns on credibility."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  In assessing credibility, the ALJ should consider "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling."  *Id.* at 909 n.3 (citing *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995)).  An ALJ need not, however, conduct a "formalistic factor-by-factor recitation of the evidence" so long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility."  *Id.* at 909.

Here, the ALJ concluded that plaintiff had a pain-producing impairment and that a loose nexus existed between that impairment and plaintiff's pain, R. at 19, but that plaintiff was not fully credible and that the evidence, taken together, did not support a finding of disability.  *Id.* at 18-21.  The ALJ explained that his conclusion was based on a number of factors, including (1) the fact that plaintiff did not seek treatment until November 2008, six months after her alleged onset date, *id.* at 19, (2) objective evidence from plaintiff's medical providers and emergency room treaters dated between January 2009 and August 2011 that described plaintiff as having a normal range of motion in the upper extremities, *id.*, *see also id.* at 211, a "normal back", *id.* at 19-20; *see also id.* at 235, and the ability to walk without a limp, weakness, or gait changes,

13

*id.* at 20; *see also id.* at 262, (3) the fact that the record reflected "very few complaints of back pain" between the time that plaintiff told her treater in October 2010 that trigger point injections had improved her pain and an emergency room treater's finding in August 2011 that plaintiff had a normal back. *Id.* at 20*; see also id.* at 298, 349, and (4) inconsistencies between plaintiff's claimed limitations due to her pain and her statements to treaters, particularly, that she had attempted to move a couch and that she was capable of walking a mile. *Id.* at 19-20.  The Court finds that the ALJ's decision that plaintiff's claimed pain was not disabling was supported by sufficient evidence that a "reasonable mind" could "accept as adequate to support [the ALJ's] conclusion." *Flaherty*, 515 F.3d at 1070.

Plaintiff also argues that the ALJ erred in discounting the functional report that plaintiff's mother prepared.  Docket No. 13 at 37.  Specifically, plaintiff argues that the ALJ was not permitted to discount plaintiff's mother's report solely because it was potentially biased. *Id.*  The ALJ, however, noted that plaintiff's mother's report concerned plaintiff's complaints of debilitating pain and that those claims were not consistent with objective medical evidence.  R. at 21.  The ALJ is properly allowed to evaluate the consistency of non-medical third party sources with other evidence of record. *See* SSR 06-03p, 2006 WL 2329939 at *6 (Aug. 9, 2006) (noting that for evidence from parents, "it would be appropriate to consider such factors as the nature and extent of the relationship[ and] whether the evidence is consistent with other evidence[.]").

## III.  CONCLUSION

For the foregoing reasons, it is

14

**ORDERED** that the decision of the Commissioner that plaintiff Stephanie A.

Brandt Stegmaier is not disabled is **AFFIRMED.**


DATED March 31, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge